**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

SEP 28 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

**DONALD WAYNE WATERS, #1074460,**

**Petitioner,**

**v.**

**Civil No. 2:11cv630**

**HAROLD W. CLARKE, Director of the**
**Virginia Department of Corrections,**

**Respondent.**

## OPINION AND FINAL ORDER

This matter is before the Court on objections to the United
States Magistrate Judge's Report and Recommendation ("R&R")
recommending that this Court grant, in part, and deny, in part,
the pending motion to dismiss filed by Harold W. Clarke
("Respondent"). After carefully considering the Magistrate
Judge's thorough R&R, the objections filed by Respondent, the
objections filed by David Wayne Waters ("Waters" or
"Petitioner"), and each party's respective responses to the
opposing party's objections, this Court conducted a de novo
review as to all recommendations in the R&R that were objected
to by either party. Having completed such review, this Court
concludes that Respondent's motion to dismiss should be **GRANTED**,
in full, and all of Waters' habeas claims are therefore **DENIED**
**and DISMISSED.** The Court hereby adopts and approves the

findings and recommendations set forth in the R&R to the extent they recommended dismissal of Waters' claims. The Magistrate Judge did not indicate that the remaining claims were meritorious, but instead simply recommended that discretionary discovery be permitted before this Court passed on the validity of such claims. As to those remaining claims, this Court concludes that an evidentiary hearing, or any other form of discovery, is unnecessary, as dismissal is warranted based on the record as it exists at this time.

## I. FACTUAL AND PROCEDURAL HISTORY

This Court adopts and incorporates herein the factual and procedural history set forth in Part A of the Magistrate Judge's R&R. Neither party objected to the Magistrate Judge's recommended factual findings nor his summary of the procedural history of this case. In short, Petitioner, was convicted in Virginia state court of aggravated sexual battery of a four year old girl. Such incident occurred while Waters was working on the victim's family's television system. Following his conviction, Waters was sentenced to 20 years in prison. After exhausting his state court remedies, Petitioner filed a federal habeas corpus motion pursuant to 28 U.S.C. § 2254 (hereinafter "§ 2254"). Petitioner's habeas motion and Respondent's motion to dismiss are currently pending before this Court.

Following issuance of the R&R, this Court received objections from both Petitioner and Respondent challenging certain recommendations made by the Magistrate Judge. The Court thereafter received each party's respective responses to the opposing party's objections. This matter is now ripe for review.

## II. STANDARD FOR REVIEWING THE R&R

"The Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)) (alteration in original); see also R. Gov. § 2254 Proceeding in U.S. Dist. Courts 8(b). As to portions of the R&R that are not objected to, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond, 416 F.3d at 315 (quoting Fed. R. Civ. P. 72 Advisory Committee's Note).

## III. DISCUSSION

### A. Standard for Evaluating § 2254 Motion

Neither party objects to the legal standard applicable to § 2254 claims as set forth in the R&R. Accordingly, the Court

hereby adopts the following legal standard as set forth by the

Magistrate Judge:

> Habeas petitions filed pursuant to 28 U.S.C. § 2254 challenge a state's custody over a petitioner on the grounds that such custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Before applying for federal habeas relief, however, a petitioner must first exhaust the remedies available in state court or demonstrate the absence or ineffectiveness of such remedies. 28 U.S.C. § 2254(b)(1). Therefore, before a state prisoner can apply for federal habeas relief, he must first give the state court an opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997); see Picard v. Connor, 404 U.S. 270, 275-76 (1971). Respondent concedes, and the Court agrees, that for purposes of federal review, Waters' claims have been exhausted. (Resp.'s Mem., ECF No. 16 at 6).
>
> Once a petitioner's state remedies have been exhausted, a federal court still may not grant relief on any claim adjudicated on the merits by the state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. §§ 2254(d)(1)-(2). A state court's decision is contrary to clearly established federal law if the court [arrives] at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court unreasonably applies clearly established law if it identifies the correct legal principle, but unreasonably applies it to the facts of the case. Id. at 413. A state court makes an unreasonable determination of fact when its application of the law depends, in whole or in part, on factual finding that is not supported by evidence in the record. See

4

Wiggins v. Smith, 539 U.S. 510, 528, 123 S. Ct. 2527 (2003) (finding contradicted by documentary record demonstrated "partial reliance on an erroneous factual finding" rendering court's conclusion unreasonable).

R&R at 10-11.

## B. Evidence Before the Supreme Court of Virginia

Petitioner's habeas motion, filed pursuant to the Supreme Court of Virginia's original jurisdiction, included four exhibits. After Respondent filed a motion to dismiss the habeas petition, Waters filed a brief in opposition to the motion to dismiss (hereinafter "supplemental brief"), attaching twenty-four newly advanced exhibits. The Supreme Court of Virginia issued a written opinion granting the motion to dismiss as to all of Petitioner's habeas claims. Such ten-page opinion individually addressed each of Waters' thirteen claims seeking habeas relief, but did not reference the supplemental brief or any of the newly submitted exhibits attached to such supplemental brief. Subsequent to dismissal, pursuant to the Rules of the Supreme Court of Virginia, Waters filed a "petition for rehearing." Va. Sup. Ct. R. 5:20. In such filing, Waters referenced both his original petition and his supplemental brief, and expressly referenced one of the exhibits attached to the supplemental brief. The Supreme Court of Virginia denied Waters' petition for rehearing in summary fashion, issuing a single-page order.

The Magistrate Judge's R&R recommends that this Court conclude that all of Petitioner's exhibits, including those attached to his supplemental brief, were properly before the Supreme Court of Virginia. Respondent objects to such recommendation, arguing that the Rules of the Supreme Court of Virginia required Petitioner to seek leave of court to file the supplemental brief, and that Waters failed to do so. Va. Sup. Ct. R. 5:7; see Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007) (indicating that, absent leave of court, only two pleadings are permitted in a Virginia "original jurisdiction habeas corpus case: a verified petition and a responsive pleading"). Respondent therefore contends that the exhibits attached to Waters' supplemental brief were not properly before the Supreme Court of Virginia when it issued its initial opinion dismissing all of Waters' habeas claims. Furthermore, Respondent contends that Waters' petition for rehearing did not cure Waters' prior procedural failure to seek leave of court to submit the additional brief and exhibits. As discussed below, this Court finds that the only exhibits properly before the Supreme Court of Virginia were those attached to Waters' original habeas petition. Accordingly, on § 2254 review, this Court is limited to considering the original exhibits. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (indicating that federal review under § 2254 is "backward looking" and

requires the federal court to examine the state court decision based <u>on the record in existence</u> at the time such decision was made).

A review of the United States Court of Appeals for the Fourth Circuit's ("Fourth Circuit") opinion in <u>Strong v. Johnson</u> reveals that this Court is bound to conclude that, at the time the Supreme Court of Virginia issued its initial ruling, Waters' supplemental brief was improperly filed, and that the exhibits attached thereto were therefore not "'evidence presented in the State Court proceeding.'" <u>Strong</u>, 495 F.3d at 139 (quoting 28 U.S.C. § 2254(d)(2)). In <u>Strong</u>, the petitioner filed a supplemental brief in support of his habeas motion. <u>Id.</u> Although the Supreme Court of Virginia did <u>not</u> issue an order expressly striking Strong's supplemental brief, such court did not mention such supplemental filing in its decision dismissing the habeas motion. <u>Id.</u> The Fourth Circuit concluded that because "[i]t appears that the [Virginia] Supreme Court adhered to its Rule 5:7," which requires leave to submit a supplemental brief, the Fourth Circuit would <u>not</u> consider Strong's supplemental brief as properly before the state court. <u>Id.</u> Mirroring the facts in <u>Strong</u>, here, Waters filed a supplemental brief, with exhibits, in the state court but the Supreme Court of Virginia did not acknowledge such brief or exhibits in its opinion. Accordingly, <u>Strong</u> mandates that this Court conclude

that, when first filed, Waters' supplemental brief and exhibits were not properly before the state court.

After the Supreme Court of Virginia issued its dismissal order, Waters filed a "petition for rehearing." Unlike Waters' supplemental brief, which required leave of court, a petition for rehearing is a filing expressly authorized by the Rules of the Supreme Court of Virginia. R. Sup. Ct. Va. 5:20. Respondent nevertheless maintains that, even though such filing is authorized, a petition for rehearing is "necessarily based on the record already properly before the court." Resp. Obj. to R&R at 3. Respondent, however, cites no authority for such proposition. Furthermore, nothing in the text of Rule 5:20 appears to act as a procedural bar to a habeas petitioner attaching exhibits to a petition for rehearing that supplement previously advanced exhibits in support of previously advanced claims for relief. In fact, there appears to be at least some support in relevant case law suggesting that a Virginia prisoner is not precluded from advancing new evidence in a petition for rehearing. See Green v. Johnson, No. 2:05cv340, 2006 WL 3746138, at *39 n.16 (E.D. Va. Dec. 15, 2006) (unpublished) ("This Court finds that all evidence presented to the Virginia Supreme Court, including evidence presented in [the] petition for rehearing, can be reviewed when making the determination of

whether the Virginia Supreme Court's decision was reasonable under § 2254(d)(2)).").[1]

Although there appears to be some support for a finding that new exhibits <u>attached to</u> a petition for rehearing are part of the record before the state court for purposes of § 2254 review, here, Waters <u>did not attach</u> his supplemental exhibits to his petition for rehearing. Furthermore, Waters did not expressly reincorporate the supplemental exhibits into his properly filed petition for rehearing, and instead merely cited to one of the improperly filed exhibits in such petition. Accordingly, because Waters' petition for rehearing does nothing more than reference an exhibit attached to a defective filing that was not before the state court, this Court concludes that none of Waters' supplemental exhibits can be deemed to have been part of the record in existence at the time the Supreme Court of Virginia's decision was made. See <u>Church v. Commonwealth</u>, 230 Va. 208, 213 (1985) (indicating that a pro se criminal defendant "is no less bound by the rules of procedure and substantive law than a defendant represented by counsel").

---

[1] In <u>Green v. Johnson</u>, No. 2:05cv340, 2007 WL 951686, at *39 n.16 (E.D. Va. Mar. 26, 2007) (unpublished), the district court found "no error in law or fact in the Magistrate Judge's thorough analysis" that included the above cited footnote. The district court's opinion was later affirmed by the Fourth Circuit by published opinion. <u>Green v. Johnson</u>, 515 F.3d 290 (4th Cir. 2008).

## C. Claims One through Three and Claim Six

Petitioner's Claims One through Three, and Claim Six, all allege ineffective assistance of counsel. The Magistrate Judge's R&R recommends dismissal of such claims and Petitioner objects to such recommendation. After conducting a de novo review of such matters, this Court adopts the Magistrate Judge's recommendation.

Claim One asserts that trial counsel was ineffective for failing to object to the prosecutor's statements during closing argument that purportedly bolstered the victim's testimony and presented the prosecutor's personal opinion. Claim Two asserts that trial counsel was ineffective for failing to object to the prosecutor's statements at closing purportedly intended to invoke the passion/emotion of the jury and portray the jury as the conscience of the community. Claim Three asserts that trial counsel was ineffective for failing to object to the prosecutor's statements during closing that portrayed Waters as a liar.

The Supreme Court of Virginia addressed Claims One through Three on the merits, and concluded that Petitioner failed to satisfy the two-part ineffective assistance of counsel test established by the United States Supreme Court in _Strickland v. Washington_, 466 U.S. 668, 687 (1984). To demonstrate that he received _constitutionally_ deficient representation, a

petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. Here, the Magistrate Judge properly concluded that the Supreme Court of Virginia's rejection of all three of Waters' ineffective assistance claims, challenging the prosecutor's remarks during closing argument, was not based on an unreasonable determination of fact or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Waters' objections to the R&R fail to demonstrate that the facts or law were unreasonably applied, and this Court therefore adopts the recommendation of dismissal set forth in the R&R as to Claims One through Three.

Claim Six asserts that Waters' trial counsel was ineffective because, while cross-examining a prosecution witness, defense counsel mentioned a prior warrant associated with Waters initially being charged with a single offense. The charges were later modified to include two offenses, including a more serious charge than that referenced in the initial warrant. Defense counsel explained at a side-bar during trial that he asked such question as a tactical attempt to secure a not-guilty verdict on the more serious count charged against Waters.[2] The

---

[2] Waters contends in his objections that there was no evidence to support the more serious charge of "animate object penetration."

11

Supreme Court of Virginia addressed such claim on the merits and concluded that Claim Six failed to satisfy either prong of Strickland. The Magistrate Judge thereafter properly concluded that the Supreme Court of Virginia's rejection of Claim Six was not based on an unreasonable determination of fact or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Waters' objection to the R&R fails to demonstrate that the facts or law were unreasonably applied, and this Court therefore adopts the recommendation of dismissal set forth in the R&R as to Claim Six.

## D. Claims Four and Five

Claims Four and Five assert that trial counsel provided ineffective assistance, and the Magistrate Judge recommends dismissal of such claims. However, unlike the claims discussed above, Waters does not object to the recommendations in the R&R and instead expressly concedes that such claims should be dismissed. Claims Four and Five are therefore dismissed, based both on Petitioner's concession, and on the fact that the face of the R&R does not reveal any "clear error."

---

However, as noted by Respondent, there was in fact testimony at trial that supported such charge. Tr. 185, 229. Waters was ultimately convicted of only the lessor charge of aggravated sexual battery.

## E. Claims Seven through Nine

### 1. Summary of Brady Claims

Claims Seven through Nine all allege misconduct by the prosecutor for the alleged failure to provide Waters' criminal trial attorney with material exculpatory information, in violation of Brady v. Maryland, 373 U.S. 83 (1963). The Magistrate Judge's R&R recommends that, at this stage in the proceedings, this Court should permit discovery, which may include an evidentiary hearing, prior to issuing a final order on such claims. It is important to note that such recommendation in no way suggests that Petitioner presented any meritorious claims—rather, it was a recommendation that additional evidence be considered.[3] Notably, the R&R expressly acknowledges that a motion for summary judgment may be appropriate at the conclusion of any discovery ordered by this Court. R&R 33, ECF. No. 29.

It is well-established that to prevail on a Brady claim, a criminal defendant must demonstrate: "(1) that the evidence is favorable, either because it is exculpatory or impeaching; (2) that the government suppressed the evidence; and (3) that the evidence was material to the defense." United States v. Higgs,

---

[3] Respondent indicates in its objections to the R&R that the Magistrate Judge improperly concluded that Petitioner's Brady claims satisfy the three-prong test set forth in United States v. Higgs, 663 F.3d 726, 735 (4th Cir. 2011). However, the Magistrate Judge did not make such finding, did not recommend that this Court make such finding, nor offer any suggestion that Petitioner's Brady claims were meritorious.

663 F.3d 726, 735 (4th Cir. 2011) (citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999)). Discussing the materiality requirement, the Fourth Circuit recently explained:

> [E]vidence is "material" if there is a reasonable probability that the proceeding would have resulted in a different outcome had the evidence been disclosed to the defense. Like the use of the term "reasonable probability" in the context of Strickland, a "reasonable probability" under Brady is one that is sufficient to undermine confidence in the outcome of the proceeding. At the heart of this inquiry is a determination whether the favorable evidence withheld from the defendant reasonably could be considered as placing the entire case in such a different light that confidence in the verdict is undermined.

Richardson v. Branker, 668 F.3d 128, 145 (4th Cir. 2012) (internal citations omitted). In analyzing materiality, although it is permissible to review the disputed evidence on an "item-by-item basis," a court's finding "ultimately must be made by considering [the suppressed evidence's] cumulative effect." Id.

Here, Waters' Claim Seven asserts that the state prosecutor failed to disclose exculpatory evidence that the child-victim viewed pornography on television at some time prior to making the accusation of sexual abuse. Claim Eight asserts that the prosecutor failed to disclose exculpatory evidence regarding a Sheriff's Office "sting" that purportedly lured Waters back into Virginia.[4] Claim Nine asserts that the prosecutor failed to

---

[4] As explained in greater detail in the R&R, at trial, the prosecutor

disclose exculpatory evidence indicating that a different TV repairman had been in the victim's residence several months before Petitioner.[5]

## 2. "Adjudication on the Merits"

As discussed in the R&R and in Part A above, this Court is tasked with determining whether the Supreme Court of Virginia's dismissal of each of Waters' state habeas corpus claims was "contrary to, or involved an unreasonable application of, clearly established federal law" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Recent developments in controlling case law have, however, effectively illustrated the import of <u>first</u> determining whether the state court's decision was an "adjudicate[ion] on the merits." <u>Id.</u>

---

introduced evidence that Petitioner had informed the Sheriff's Office that he was on his way to South Carolina where he would stay for a couple weeks, but Petitioner was arrested the next day in Virginia. Such evidence was used by the prosecution to support the inference that Petitioner was a liar and that Petitioner was feeling pressure as a result of his guilt for the charged crimes. Petitioner contends that the only reason he was in Virginia was because the Sheriff's Office, in conjunction with Petitioner's employer, lured him into Virginia. The prosecutor's actual or imputed knowledge of a Sheriff's Office "sting" could be exculpatory as a result of the arguments/ theory advanced by the prosecutor during closing.

[5] Such fact could be exculpatory because the child-victim did not offer a physical description of the "TV man" that assaulted her during her trial testimony and also could not make an in-court identification of Waters during trial as the man who assaulted her. That said, the child's testimony did establish <u>when</u> she was assaulted, and Waters was the only TV repairman in the victim's house around such time.

In *Winston v. Kelly*, 592 F.3d 535 (4th Cir. 2010) (*Winston I*), the Fourth Circuit concluded that if a state court denies a habeas claim on a record that "ultimately proves to be incomplete," § 2254(d) deference to the state court's judgment may not be appropriate because "judgment on a materially incomplete record is not an adjudication on the merits for purposes of § 2254(d)." *Id.* at 555-56 (citing *Wilson v. Workman*, 577 F.3d 1284, 1292 (10th Cir. 2009) (en banc)). The Fourth Circuit's finding that the state court had not adjudicated the claim on the merits in *Winston* appeared to rely heavily on the fact that the petitioner offered, "for the first time in federal habeas proceedings, new, material evidence that the state court could have considered had it permitted further development of the facts." *Id.* at 555 (emphasis added).

Following *Winston I*, the United States Supreme Court decided *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), discussing the deference owed under § 2254(d) to state court habeas decisions on the merits. The Court explained that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits" and may not also include materials presented for the first time in federal court (such as materials obtained through federal discovery). *Id.* at 1398. Such conclusion is supported by the fact that § 2254(d) uses "backward-looking language" and thus requires that "the

record under review is limited to . . . the record before the state court." Id. The Supreme Court went on to discuss why such textual interpretation is "compelled by 'the broader context of the statute as a whole,' which demonstrates Congress' intent to channel prisoners' claims first to the state courts." Id. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). The Court explained:

> The federal habeas scheme leaves primary responsibility with the state courts . . . ." [Woodford v.] Visciotti, [537 U.S. 19] at 27 [(2002) (per curiam)]. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo. . . . Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. . . . It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

Id. at 1398-99. Toward the end of its analysis on such issue, the Supreme Court did expressly note that the § 2254(d) standard does not apply to all habeas claims, but instead only to those claims "'adjudicated on the merits in State court proceedings.'" Id. at 1401 (quoting § 2254(d)). Accordingly, "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." Id. The statutory scheme created by Congress

thus ensures "that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues <u>which a prisoner made insufficient effort to pursue in state proceedings.</u>'" <u>Id.</u> (quoting <u>Williams (Michael) v. Taylor</u>, 529 U.S. 420, 437 (2000)) (alteration in original); <u>see</u> <u>Harrington v. Richter</u>, 131 S. Ct. 770, 787 (2011) ("Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions."). Because the statutory scheme developed by Congress, supported by principles of comity, federalism, and finality, all support a state-court being the primary authority for resolving constitutional claims based on alleged defects in <u>state-court proceedings</u>, the § 2254(d) standard is "difficult to meet, and [is a] highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." <u>Pinholster</u>, 131 S. Ct. at 1398 (internal quotation marks and citations omitted); <u>see</u> <u>Richter</u>, 131 S. Ct. at 787 (quoting <u>Calderon v. Thompson</u>, 523 U.S. 538, 555-56 (1998)) ("'Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.'").

In the immediate wake of the United States Supreme Court's ruling in <u>Pinholster</u>, it could be argued that the analysis in

Winston I was called into doubt by Pinholster. However, the Fourth Circuit resolved such question in its post-Pinholster opinion in Winston v. Pearson, 683 F.3d 489 (4th Cir. 2012) (Winston II), indicating that "nothing in Pinholster indicates that the [Supreme] Court's disposition casts doubt on—much less overrules—our discussion of the adjudicated-on-the-merits requirement in Winston I." Id. at 501-02. To clarify, the Fourth Circuit indicated in Winston II that the rule announced in Pinholster is limited to cases where a habeas claim is adjudicated on the merits in state court proceedings. Id. at 501. Relying on law-of-the-case principles, and the fact that the Supreme Court did not address the "adjudicated on the merits" standard in Pinholster, the Fourth Circuit concluded that the § 2254(d) standard of review discussed in Pinholster simply did not apply to the case before the Fourth Circuit. Id. at 503.

Synthesizing the above cases, the threshold question that must be addressed by a district court is whether the claims at issue were "adjudicated on the merits" in the state habeas action. In Winston II, the Fourth Circuit noted that the claim at issue in that case had not been adjudicated on the merits based on the state court's "unreasonable denial of [the petitioner's] requests for discovery and an evidentiary hearing" in state court. Winston II, 683 F.3d at 502 (emphasis added).

The Fourth Circuit "found in _Winston I_ that the state court's refusal to allow Winston to develop the record, <u>combined with the material nature of the evidence that would have been produced in state court were appropriate procedures followed</u>, rendered its decision unbefitting of classification as an adjudication on the merits." _Id._ (emphasis added).

Here, having carefully reviewed the state court record, the R&R, and the parties filings in this proceeding, this Court finds that the Supreme Court of Virginia's dismissal of Claims Seven through Nine was an "adjudication on the merits" and that, pursuant to _Pinholster_, this Court's backward looking review is limited to reviewing the evidence properly before the state court. The Supreme Court of Virginia carefully considered and analyzed each of Petitioner's three _Brady_ claims, as well as the evidence properly submitted by Petitioner in support of such claims. The state court opinion individually discussed each of Waters' habeas claims, explained why each claim failed, and as the Magistrate Judge noted, such ruling was based on the state court's factual findings. Unlike in _Winston_, here, there is no evidence, previously submitted or newly submitted to this Court, suggesting that the Supreme Court of Virginia's decision not to authorize discovery or conduct an evidentiary hearing was "unreasonable." Although Petitioner requested discovery in state court, his <u>properly advanced</u> evidence failed to

demonstrate the need for discovery. Therefore, this Court cannot interpret the individualized analysis made by the Supreme Court of Virginia as anything other than an "adjudication on the merits." See Richter, 131 S. Ct. at 784 (noting that § 2254 "refers only to a 'decision,' which resulted from an 'adjudication,'" and that a "one-sentence summary order" issued by the state court dismissing a multi-claim state habeas petition supported by several affidavits was no less an "adjudication on the merits" than a detailed state opinion discussing the reasons for denying each claim); Bell v. Jarvis, 236 F.3d 149, 158 (4th Cir. 2000) (recognizing that even where the state court "did not articulate the rationale underlying its rejection" of the petitioner's habeas claims, "the state court decision is no less an 'adjudication' of the merits of the claim"). Although Waters attempted to submit additional evidence to the state court in an improperly filed supplemental brief, such supplemental evidence is insufficient to demonstrate the "material nature of the evidence that [could] have been produced in state court" had such court opted to permit discovery. Winston II, 683 F.3d at 502. Accordingly, such evidence, even if considered, is insufficient to undermine the finding that the state court did in fact adjudicate Waters' Brady claims on the merits.

### 3. Evaluation under § 2254(d)

Having found that the Supreme Court of Virginia's decision was an "adjudication on the merits," this Court conducts a backward looking review of such decision to individually determine whether the state court unreasonably applied clearly established federal law or made an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d); Pinholster, 131 S. Ct. at 1398. Such standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." Pinholster, 131 S. Ct. at 1398; see Richter, 131 S. Ct. at 786 (noting that it "bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable" and that although "§ 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," it goes no farther than acting as a "guard against extreme malfunctions in the state criminal justice systems") (internal quotation marks and citations omitted). In reviewing the state court's ruling under § 2254(d), the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); see Winston I, 592 F.3d at 554 (indicating that a factual determination is not

"unreasonable" under § 2254(d)(2) if it is "merely incorrect or erroneous," rather, it must be "sufficiently against the weight of the evidence that it is objectively unreasonable").

The above deferential standard is applicable not only to the Court's determination as to the ultimate merit of a habeas claim, but "because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must [also] take into account those standards in deciding whether an evidentiary hearing is appropriate." Id. at 474. Notably, even if granting an evidentiary hearing might permit a petitioner to prove the factual allegations contained in his petition, if habeas relief under § 2254(d) is nevertheless barred because the state court made an appropriate adjudication on the merits based on the record in existence before the state court, an evidentiary hearing may be futile. See id. ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## a. Backward Looking Review – Four Exhibits

As previously discussed herein, here, Waters submitted four exhibits with and in support of his state habeas petition and such exhibits were properly before the state court. Waters thereafter submitted twenty-four supplemental exhibits attached to an improperly filed supplemental brief. Considering, as this

Court must, only the properly filed exhibits, this Court's backward looking review of the state court decision does not identify any unreasonable determination of the facts or unreasonable application of federal law.

### i. Claim Seven

As to Claim Seven, the assertion that the prosecutor suppressed evidence that the child-victim had viewed pornographic programming at some time prior to making allegations of sexual abuse, the Supreme Court of Virginia's ruling was premised primarily on the factual finding that Waters failed to demonstrate that the prosecutor possessed the allegedly exculpatory evidence. Specifically, Waters attached a "call log" demonstrating that the child-victim may have accidentally ordered a pay-per-view adult pornographic movie several months before she was abused.[6] In dismissing such claim, the state court appropriately relied on the prosecutor's sworn affidavit stating: "I was never informed, nor am I aware, of the victim ever viewing pornographic programming" and that "I was unaware of the [call log] until I was recently provided it along with Water's petition." Mo. to Dismiss, Ex. 3. Waters' assertion in his state habeas petition that "the petitioner, by

---

[6] Such call log does not demonstrate that the child actually viewed such movie, and it documents that when the cable representative asked the mother to verify whether the movie was actually playing, the mother indicated that she could not check because her daughter was present.

counsel, during November 2009, became aware of a statement by the parents admitting that they gave [the prosecutor] information regarding the fact that the child had viewed pornographic programming" was not supported by any evidence other than Petitioner's verified memorandum asserting such fact. Even if the state court accepted Waters' factual assertion as true, his statement contains multiple levels of hearsay, and it therefore did not need to be afforded any evidentiary value by the state court. See, e.g., Elliott v. Warden of Sussex I State Prison, 274 Va. 598, 599 (2007) (noting that the alleged Brady violations asserted in the petitioner's habeas corpus motion, which was supported by "affidavits containing hearsay information," was "factually without merit"); Lee v. Illinois, 476 U.S. 530, 543 (1986) (noting that hearsay that does not fall within any exception is "presumptively unreliable"). Accordingly, this Court does not find that the Supreme Court of Virginia made an incorrect, let alone "unreasonable," determination of the facts as to its finding that Waters failed to demonstrate that the prosecutor possessed any exculpatory evidence regarding the child-victim having viewed pornographic programming.

### ii. Claim Eight

As to Claim Eight, the assertion that the prosecutor suppressed evidence that demonstrated that the Sheriff's Office

orchestrated a "sting" to lure Waters back to Virginia, the Supreme Court of Virginia's ruling was two-fold, finding that Waters failed to demonstrate either that the prosecutor suppressed exculpatory evidence or that such evidence was material. Considering first the suppression issue, upon review, this Court does not find that the Supreme Court of Virginia's factual finding was "unreasonable," even though there appears to be one interpretation of the evidence that could render such ruling "incorrect." Notably, Petitioner's Exhibit 1, properly attached to his state habeas petition, does not clearly demonstrate that a Sheriff's Office orchestrated "sting" lured Waters back into Virginia from another state. Although one possible interpretation of such evidence is that Waters was "set-up" by his employer in conjunction with the Sheriff's Office, another interpretation is that the Sheriff's Office contacted Waters' employer in order to identify and locate Waters and it was Waters employer that decided to "set-up" Waters in order to assist the Sheriff's Office in apprehending him. Furthermore, nothing in the exhibit suggests <u>from which state</u> Waters was "lured" back into Virginia. It is also notable that the deposition testimony presented by Waters states that it was the <u>deponent's</u> "understanding" that, <u>another work colleague</u>, contacted <u>another work colleague</u>, who contacted Waters to get him to come back into Virginia where he was ultimately arrested.

Habeas Pet. Ex. 1 at 21. Such testimony appears of limited evidentiary value to demonstrate that the Sheriff's Office orchestrated a sting to lure Waters back into Virginia. In contrast to such evidence, the prosecutor provided a sworn affidavit stating that it "is not the case" that the Sheriff's Office or the prosecutor "were aware of or participated in a 'sting' to lure [Waters] back to Virginia." Mo. to Dismiss Ex. 3. The prosecutor later added additional sworn details, including the fact that the "information that was given to the Sheriff's Department by [Waters' employer] was information regarding [Waters] location. The Sheriff's Department did not instruct [the employer] to have [Waters] come to any location as part of a 'sting.'" Id. Although more than one interpretation of Waters' evidence may be possible, giving due deference to the state court, the factual finding that there was not a sting orchestrated by the Sheriff's Office was not "unreasonable." See Winston I, 592 F.3d at 554 (indicating that, to be "unreasonable," a factual determination must be "sufficiently against the weight of the evidence that it is objectively unreasonable").

Moreover, even if the state court made an unreasonable factual finding, and it is assumed that the Sheriff's Office

participated in luring Waters back into Virginia,[7] it cannot be said that the state court's materiality determination was "contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Clarifying such standard, similar to the "unreasonable" factual finding standard, "[f]or purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Richter, 131 S. Ct. at 785 (quoting Williams (Terry) v. Taylor, 529 U.S. 362, 410 (2000)). Accordingly, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the [Brady materiality analysis] itself." Id. Furthermore, such deferential evaluation "'requires considering the rule's specificity'" and the "'more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). To those complaining that such standard "is difficult to meet, that is because it was meant to be." Id. In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state

---

[7] The Sheriff's Office's knowledge would be imputed to the prosecutor for the purposes of the Brady analysis. See, e.g., United States v. Robinson, 627 F.3d 941, 951-52 (4th Cir. 2010) (citing Kyles v. Whitley, 514 U.S. 419, 437 (1995)) (acknowledging that Brady generally imputes the knowledge of those acting on the government's behalf to prosecutors regardless of actual knowledge).

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87. Here, as highlighted by the Supreme Court of Virginia, the purported "lie" told by Waters related to a collateral matter that had no direct bearing on the validity of the sworn trial testimony of the child-victim or her mother. Regardless of whether Waters' purported "lie" was highlighted by the prosecutor during closing, the state court reasonably applied the Brady materiality standard in concluding that the asserted evidence of the Sheriff's Office sting was not "material," because there was not a "reasonable probability that the proceeding would have resulted in a different outcome had the evidence been disclosed to the defense." Richardson, 668 F.3d at 145.

### iii. Claim Nine

As to Claim Nine, the assertion that the prosecutor suppressed evidence establishing that a TV repairman other than Waters was at the victim's house several months before Waters performed his service call, the Supreme Court of Virginia concluded that such claim was without merit because the evidence presented by Waters was not exculpatory. Such ruling, did not involve an "unreasonable" determination of the facts as the Supreme Court of Virginia properly relied on several key pieces

29

of evidence that have not been called into question: (1) the victim's trial testimony indicated that she was molested by the "TV man" while her brother, who was only a few weeks old at the time, was downstairs in his crib—it is not disputed that the "other" TV repairmen was at the victim's home months before the victim's brother was born; (2) the prosecutor indicated in her sworn affidavit that the allegedly exculpatory email exchange between the prosecutor and the victim's mother "was to clarify that the victim's description of the TV guy could not have been attributed to a previous technician, because the victim described the perpetrator as being white and the previous technician was black"; and (3) the same emails that Waters contends are exculpatory confirm both that the "other" TV repairman was black and that, prior to trial, the victim stated that the incident occurred after her brother was born.

The Supreme Court of Virginia's conclusion that such emails were not exculpatory was also not "unreasonable." As previously stated, in order to obtain habeas relief in this Court, Waters must show that the ruling by the state court was "so lacking in justification" that there is no "possibility for fairminded disagreement" on such matter. Richter, 131 S. Ct. at 786-87. Here, Waters contends that the emails were exculpatory because they demonstrated that the victim's mother was "unsure of the perpetrator's identity prior to petitioner's trial" and had made

prior inconsistent statements. Habeas Pet. at 37. First, such assertion is belied by the prosecutor's affidavit and the mother's testimony at trial. Second, such assertion makes little sense as Waters himself freely admitted that he was at the victim's home in January of 2005, which was shortly after the victim's brother was born. Third, even if, pre-trial, the mother had any "doubt" about the identity of the perpetrator, the claimed exculpatory emails demonstrate in two independent ways that the "other" TV repairman could not have been the perpetrator: (1) the other repairman came to the victim's home approximately six months before the victim's brother was born;[8] and (2) the other repairman was black, not white as the victim purportedly described the perpetrator. Accordingly, the emails do not offer any factual support for Petitioner's speculative assertion that the victim's mother had made inconsistent prior statements. Furthermore, under one interpretation, the emails may have been inculpatory, rather than exculpatory, as they appear to make it more likely that Petitioner was the perpetrator. This Court therefore concludes that the ruling by the Supreme Court of Virginia that the emails were not exculpatory was not the result of either an "unreasonable"

---

[8] The Court notes that a review of the trial transcript reveals that the victim was also asked whether the incident happened "right after Hanukah" and she responded: "Yeah." Trial Tr. 178. It is undisputed that Waters was in the victim's home in January of 2005, whereas the "other" TV repairman was in the home in May of 2004.

factual determination or "unreasonable" application of clearly established federal law.

### b. Backward Looking Review – All Exhibits

If this Court assumes, for the purposes of this analysis only, that Petitioner's supplemental exhibits were before the Supreme Court of Virginia for the purposes of this Court's § 2254(d) review, the Court alternatively concludes that Waters remains unable to demonstrate that habeas relief is appropriate under § 2254(d). Considering Waters' claims in reverse order, Petitioner offered no untimely supplemental evidence in support of Claim Nine, and thus the above analysis remains applicable.

As to Claim Eight, Petitioner's supplemental evidence strengthens his factual assertion that the Sheriff's Office was involved in the "sting" to arrest Waters in Virginia. However, Petitioner's supplemental evidence has no effect whatsoever on the Supreme Court of Virginia's alternative conclusion that, even if the Sheriff's Office participated in a sting and exculpatory evidence was suppressed, such evidence was not material. Accordingly, regardless of the number of exhibits considered,[9] this Court would not disturb the finding of the

---

[9] The Court notes that while Petitioner's supplemental evidence strengthens his assertion that the Sheriff's Office participated in the sting to entice Waters to return to Virginia, such evidence also suggests that Waters was enticed to return from Maryland, not South Carolina--Waters' location as he reported it to the Sheriff's Office. Supp. Brief Ex. 17 at 19. Accordingly, Water's supplemental evidence does not appear to demonstrate that the prosecution withheld evidence

state court because the Supreme Court of Virginia's alternative legal analysis regarding materiality was not "unreasonable."

As to Claim Seven, the bulk of Petitioner's supplemental exhibits are in support of his habeas claim asserting that the prosecutor withheld exculpatory information that the child-victim "had viewed pornographic programming during the months prior to the Petitioner's arrival at their home" and that the "prosecutor was aware of documentation that confirmed that the Mother called Dish Network and stated that the child had viewed pornographic programming." Habeas Pet. at 32 (emphasis added). Waters supplemental exhibits take the form of: (1) numerous cable bills demonstrating that the victim's parents had a monthly subscription to a TV channel that Waters asserts is adult programming, Supp. Brief Exs. 1-14; (2) a letter from the civil attorney representing Waters in the subsequent civil suit arising out of the sexual assault which states that "[a]t some point" during discussions between the judge, the victim's family members, and the opposing attorney, "a comment was apparently made that at least some of the more 'intimate'[10] subject matters in our Confidential Memorandum were, or were believed to have

---

that Waters was enticed by the Sheriff's Office to return to Virginia from South Carolina, the only "enticement" that would appear to be "exculpatory."

[10] A footnote to the word "intimate" in the letter stated: "Whether the child had even been exposed to adult programming on the family TV; whether she had ordered a Pay Per View adult movie by mistake; or whether she simply had access to adult programming on their system." Id.

been, discussed with the prosecutor prior to your trial" Supp. Brief Ex. 15 (emphasis added); and (3) an affidavit from Waters' criminal attorney stating that he had "been advised by Mr. Waters that the child may have been exposed to pornographic materials provided by her family's cable television provider" and that "[i]nsomuch as the child identified her assailant as 'the tv man' and was unable to identify the defendant as her assailant, I believe that if the above information is accurate . . . it would have been further investigated and changed, in part, the manner in which I defended Mr. Waters at trial" Supp. Brief Ex. 24 (emphasis added).

Although the above evidence offers some additional support for the assertions contained in Waters habeas motion, such inconclusive evidence is nevertheless insufficient to support a finding that it was "unreasonable" for the state court to adopt the prosecutor's direct, sworn statement that: "I was never informed, nor am I aware, of the victim ever viewing pornographic programming." Mo. to Dismiss Ex. 3. Notably, the subscription to an adult channel does not demonstrate that the child ever accessed such channel. The letter from the civil attorney was on its face both vague and unreliable as it recounts a conversation to which the author of the letter was apparently not a party, it does not state who the speaker was that "apparently" made the comment at issue, it does not state

which of the several "intimate" topics was apparently relayed to the prosecutor by such speaker, and finally, it indicates that the unidentified speaker discussed, or "believed to have" discussed, such matter or matters with the prosecutor. Far from a smoking gun, such letter's second hand speculation offers little to further Waters' factual assertion that the prosecutor possessed exculpatory evidence on such topic. The affidavit from Waters criminal counsel likewise offers little or no factual support for Waters' claims as it relies entirely on hearsay from other sources relayed to counsel by Waters.[11]

Accordingly, even considering all of the supplemental exhibits attached to Waters' supplemental brief, Waters is unable to overcome the highly deferential standard established by § 2254(d). The state court's factual and legal findings were reasonable with respect to Claims Seven through Nine. Alternatively, even if the supplemental evidence could be viewed as demonstrating that the state court made an unreasonable factual determination regarding the Sheriff's Office participating in a "sting," the state court's express alternative holding that such matter was not "material" and thus could not amount to a Brady violation is reasonable. Therefore,

---

[11] Water's criminal trial counsel noted in a letter to Waters that is also labeled as "Exhibit 24" to Water's supplemental brief that counsel had no firsthand knowledge about the prosecution's possession of any information about pornographic materials. Counsel's affidavit comports with such lack of any direct knowledge on such topic.

this Court would reach the same ultimate conclusion regardless of the exhibits considered.

### 4. Alternative Evaluation under § 2254(e)

Alternatively to the analysis in Parts 2 and 3 immediately above, even were this Court to determine that Waters' claims were not adjudicated on the merits in state court, it appears that Petitioner would not be eligible for an evidentiary hearing in this case based on the statutory restriction set forth in § 2254(e)(2). Such restriction "precludes a district court from conducting an evidentiary hearing on a federal habeas claim if the petitioner 'failed to develop the factual basis of [the] claim in State court proceedings.'" Wolfe v. Johnson, 565 F.3d 140, 166 (4th Cir. 2009) (citing § 2254(e)(2)) (alteration in original). The United States Supreme Court has explained the meaning of Congress' use of the word "failed" in such statutory provision as follows:

> In its customary and preferred sense, "fail" connotes some omission, fault, or negligence on the part of the person who has failed to do something. To say a person has failed in a duty implies he did not take the necessary steps to fulfill it. He is, as a consequence, at fault and bears responsibility for the failure. . . . We conclude Congress used the word "failed" in the sense just described. . . . [Accordingly], [u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.

<u>Williams (Michael)</u>, 529 U.S. at 431-32. The Supreme Court further clarified that when analyzing a prisoner's "diligence," a district court should consider "whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." <u>Id.</u> at 435. The requirement of diligence upholds principles of comity and federalism, because for "state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error." <u>Id.</u> at 437. "If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met." [12] <u>Id.</u>

Here, it appears that Waters failed to diligently develop the record in the state court proceedings because he apparently had in his possession several pieces of evidence in support of his habeas claims that he did not present to the state court-- namely, the majority of the exhibits attached to Waters'

---

[12] There are two exceptions that apply even when a petitioner has failed to diligently develop the record in state court--a new retroactive rule of constitutional law, or a factual predicate that could not have been previously discovered. 28 U.S.C. § 2254(e)(2)(A). Neither of such exceptions is applicable in this case.

improperly filed supplemental brief. See Williams (Michael), 529 U.S. at 437 (indicating that if the prisoner's lack of diligence "contribut[es] to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court"); Winston I, 592 F.3d at 549 (quoting Vasquez v. Hillery, 474 U.S. 254, 260 (1986)) (noting that absent an exhaustion rule that requires a petitioner to first advance both his legal claims and the operative facts in support of such claims in state court, "petitioners could 'expedite federal review by deliberately withholding essential facts from the state courts,' thus upsetting the careful balance struck by Congress between respecting the finality of state court judgments and enforcing federal rights."). Because Waters' own conduct of failing to present relevant evidence in his possession to the state court demonstrates a lack of diligence in developing the factual record, and because neither of the exceptions in § 2254(e)(2)(A) apply, it appears that even if this Court concluded that the state court did not adjudicate Waters' Brady claims on the merits, an evidentiary hearing would be barred pursuant to § 2254(e)(2).[13] See Pinholster, 131 S.Ct. at 1401 (explaining that

---

[13] Although a district court may generally consider "'Brady material that has surfaced for the first time during federal [habeas] proceedings,'" Wolfe v. Clarke, -- F.3d --, 2012 WL 3518481 (4th Cir. Aug. 16, 2012) (quoting Monroe v. Angelone, 323 F.3d 286, 297 (4th Cir. 2003)), such rule does not appear to extend to materials that

"[s]ection 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief.").

### F. Claims Ten, Eleven and Thirteen

Claims Ten, Eleven, and Thirteen all allege misconduct by the prosecutor at trial. Claims Ten and Eleven allege that the prosecutor made improper statements during her closing argument by giving a personal opinion, bolstering witness testimony, and calling the jury the conscience of the community. Claim Thirteen alleges that the prosecutor made an improper remark to the jury during the sentencing phase regarding one of Waters' prior convictions.

The Supreme Court of Virginia concluded that the above referenced claims were procedurally defaulted because no contemporaneous objection was raised during trial nor was this matter raised on direct appeal. The Magistrate Judge properly concluded in the R&R that Waters fails to overcome his procedural default as to such claims by either alleging facts sufficient to prove actual innocence or by demonstrating both "cause" and "prejudice" for his procedural default.

Although Petitioner objected to the Magistrate Judge's ruling on such claims, his objection is conclusory, and fails to specify how the Magistrate Judge erred. See Fed. R. Civ. P.

---

Petitioner already had in his possession when he filed his state habeas motion).

72(b) (indicating that a party must advance "specific written objections to the proposed findings and recommendations" and that the district judge must only make de novo determinations as to "any part of the magistrate judge's disposition that has been properly objected to") (emphasis added); Smith v. Washington Mut. Bank FA, 308 Fed. Appx. 707, 708 (4th Cir. 2009) (unpublished) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)) ("The [district] court need not conduct de novo review, however, 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.'"). In light of the conclusory nature of Petitioner's objection, the Court adopts the Magistrate Judge's ruling because no clear error exists on the face of the R&R.

Alternatively, out of an abundance of caution, this Court conducted a de novo review of such claims. After having done so, this Court adopts the recommendation in the R&R that Petitioner has not overcome his procedural default, and the Court therefore dismisses Claims Ten, Eleven, and Thirteen.

### G. Claim Twelve

Petitioner's Claim Twelve alleges misconduct by the prosecutor at trial in that the prosecutor called "Petitioner a liar [during closing] insofar as the Petitioner did not testify or present any character witnesses . . . ." Habeas Pet. at 43.

Petitioner's purported "lie" was that he told the Sheriff's Office that he was on his way to South Carolina where Waters would stay for a couple weeks. Shortly after Waters made such statement, he was arrested in Virginia.

The Supreme Court of Virginia concluded that Claim Twelve was procedurally defaulted as it was raised for the first time in Petitioner's habeas motion. The Magistrate Judge, however, recommended that the motion to dismiss Claim Twelve be denied, noting that Waters plausibly alleged "cause" to excuse the failure to contemporaneously object to the prosecutor's statement. The Magistrate Judge based such recommendation on the fact that it was the prosecutor's alleged failure to disclose exculpatory information that caused Waters and/or defense counsel to lack knowledge about the Sheriff's Office's alleged enticement of Waters back to Virginia. Respondent objected to the Magistrate Judge's recommendation, arguing that there is insufficient evidence to demonstrate that the Sheriff's Office participated in a "sting," and that even if it did participate, other evidence demonstrates that Waters still told a lie.

Having conducted a de novo review of this issue, this Court finds that Claim Twelve should be dismissed because the Supreme Court of Virginia appropriately concluded that such claim was procedurally defaulted. A review of the allegation in Claim

Twelve reveals that Waters' argument is limited to the assertion that it was improper for the prosecutor to call him a "liar" during her closing argument because Waters didn't testify or present character evidence and because such statement was the prosecutor's personal opinion. Waters does not assert in Claim Twelve that the prosecutor's statement was improper on the basis that the prosecutor knew, or should have known, about a Sheriff's Office sting to lure Waters back to Virginia. Accordingly, the purportedly improper nature of the prosecutor's comments as argued by Waters in Claim Twelve would have been apparent to the defense and therefore provided sufficient notice so that an objection could have been made during trial. Therefore, Waters cannot establish "cause" for not having advanced a contemporaneous objection during trial.[14]

Because defense counsel could have objected to the prosecutor's statement labeling Waters a "liar" regardless of counsel's knowledge of the details of the alleged Sheriff's Office sting, Claim Twelve was appropriately dismissed by the Supreme Court of Virginia, and it is again dismissed by this Court.

---

[14] As previously discussed herein, the Supreme Court of Virginia did not err in concluding that defense counsel's failure to contemporaneously object did not rise to the level of ineffective assistance. Therefore, "cause" cannot be established based on counsel's performance. Additionally, as previously discussed, Waters fails to demonstrate that the prosecution suppressed any material exculpatory evidence regarding the alleged Sheriff's Office sting.

## IV. CONCLUSION

After carefully considering the detailed R&R and the parties' objections and responses, this Court made de novo determinations with respect to the portions of the R&R that were objected to. The Court now hereby adopts and approves the findings and recommendations set forth in the R&R to the extent they recommended dismissal of Waters' claims. As to the remaining claims, which the Magistrate Judge did not indicate were meritorious, but instead simply recommended that discretionary discovery be permitted before this Court passed on the validity of such claims, this Court concludes that discovery is unnecessary and that dismissal is warranted based on the record as it exists at this time. Accordingly, for the reasons set forth in detail above, Respondent's motion to dismiss is **GRANTED,** and **all** **of Waters' habeas claims** are hereby **DENIED** and **DISMISSED.**

A petitioner does not have the right to appeal a final order in a § 2254 proceeding unless a judge or circuit justice issues a "certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). To obtain such a certificate, a petitioner must make "a substantial showing of the denial of constitutional right." 28 U.S.C. § 2253(c)(2). When relief is denied on the merits, a petitioner satisfies this standard by demonstrating "that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When relief is denied on procedural grounds, a petitioner "must demonstrate both that the dispositive procedural ruling is debatable, and that the motion states a debatable claim of the denial of a constitutional right." United States v. Morris, 475 Fed. Appx. 904, 904 (4th Cir. 2012) (unpublished) (citing Slack, 529 U.S. at 484-85).

Finding that Waters has not satisfied such standard, a certificate of appealability as to his § 2254 motion is **DENIED**. See R. Governing § 2254 Proceedings in U.S. Dist. Cts. 11(a) (indicating that a district court must either grant or deny a certificate of appealability when issuing a final order resolving a § 2254 motion in a manner adverse to the petitioner).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2254 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within thirty (30) days from the date of this Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Petitioner, and to counsel for Respondent.

**It is so ORDERED.**

/s/ 

Mark S. Davis
United States District Judge

September 28, 2012
Norfolk, Virginia